IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ANDREW LITTLETON,** | **:**  No. 1:07-CV-01515 |
| Plaintiff | : |
| | **:**  JUDGE SYLVIA H. RAMBO |
| v. | : |
| **STATE FARM FIRE & CASUALTY COMPANY,** | : |
| Defendant | : |

# **M E M O R A N D U M**

Before the court is a motion to dismiss filed by Defendant State Farm Fire & Casualty Company ("State Farm").  State Farm argues that Plaintiff's claims that it employed unfair trade practices, negligently misrepresented the value of his home and property, and intentionally caused him emotional distress should be dismissed for failure to state a claim.  For the reasons that follow, the motion will be granted in part and denied in part.

**I.        Background**

On this motion to dismiss, the court sets forth the facts stated in Plaintiff's complaint and accepts them as true.  Plaintiff Andrew Littleton purchased his home, located on five acres of property, in 1997.  He contacted State Farm agent Robert Perritt for an estimate of the type of insurance policy his home and land would require, and the amount for which they should be insured.  Perritt "sold [Plaintiff] the policy with all options," informing Plaintiff "that the amount of insurance was absolutely necessary to insure his home and possessions," in spite of Plaintiff's articulated concerns about the amount of the premium.  (Doc. 5-2 ¶ 6.) Plaintiff relied on Perritt's advice, purchased the policy, and paid premiums every year.  The policy provided $221,500 in dwelling coverage with an increase option of

$44,300; $166,125 in personal property coverage, and coverage for Plaintiff's loss of use of the property.

Plaintiff lived on his property, owning numerous animals and large pieces of equipment like four-wheelers, until the early morning of December 21, 2005. On that date, Plaintiff's house burned to the ground. The next day, an adjuster for State Farm inspected the remains. She instructed Plaintiff to make a list of his property and notify his mortgage company. In January 2006, she told him to dig through the rubble for anything salvageable; these things, if found, would become the property of State Farm. She also told him to recreate his receipts in support of his property loss claim.

Plaintiff sorted through the rubble and saved certain items for State Farm. He received cuts from the rubble, which led to a bacterial infection. The infection was treated with penicillin for twenty-eight days.

After the fire, Plaintiff located a three-bedroom home comparable to the one that had just burned. It would have allowed him to maintain his animals and equipment for rent of $3,800 per month. State Farm did not approve this property and "insisted that he live in a two-bedroom apartment" – an insufficient space to shelter his animals and property. Without a sufficiently large living space, Plaintiff was unable to care for his animals, some of which died. In March 2006, State Farm paid Plaintiff $18,400 in additional living expenses. Plaintiff alleges that State Farm has failed to pay adequate additional living expenses required by Plaintiff's policy.

The results of Plaintiff's searching and restoring led to a list of his destroyed property and over 2,000 pages of records. He submitted the information to the adjuster. State Farm paid $34,731.77 for personal property loss on October

10, 2006. In or around May 2007, State Farm paid the balance of the limit of his personal property loss coverage, nearly $136,000.

On January 13, 2006, the State Farm adjuster advised Plaintiff that the replacement value of his home was $138,473. Plaintiff initially believed that he could rebuild his home with that amount. Plaintiff then consulted with a State Farm-approved builder, who told Plaintiff that $138,473 was insufficient. On June 13, 2007, State Farm revised its estimate of the replacement value of Plaintiff's home to $175,000. This amount is still not enough.

Based on the above facts, Plaintiff charges five counts of liability against State Farm in his complaint, originally filed in state court. (Doc. 5-2.) Defendant removed the suit to this court on August 16, 2007. (Doc. 1.) Defendant filed a motion to dismiss three of those counts on August 23, 2007. (Doc. 5.) The motion has been fully briefed and is ripe for disposition.

**II.         Legal Standard – 12(b)(6) Motion to Dismiss**

Among other requirements, a sound complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This statement must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, — U.S. —, 127 S. Ct. 1955, 1964 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint need not contain detailed factual allegations, but a plaintiff must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action" to show entitlement to relief as prescribed by Rule 8(a)(2). *Id.* at 1965; *accord, e.g., Evancho v. Fisher*, 423 F.3d 347, 350 (3d Cir.

2005). A defendant may attack a complaint by a motion under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

In deciding a motion to dismiss under Rule 12(b)(6), the court is required to accept as true all of the factual allegations in the complaint, *Erickson v. Pardus*, — U.S. —, 127 S. Ct. 2197, 2200 (2007), and all reasonable inferences permitted by the factual allegations, *Watson v. Abington Twp.*, 478 F.3d 144, 150 (3d Cir. 2007), viewing them in the light most favorable to the plaintiff, *Kanter v. Barella*, 489 F.3d 170, 177 (3d Cir. 2007). The court is not, however, "compelled to accept unsupported conclusions and unwarranted inferences or a legal conclusion couched as a factual allegation." *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (quotations and citations omitted). If the facts alleged are sufficient to "raise a right to relief above the speculative level" such that the plaintiff's claim is "plausible on its face," a complaint will survive a motion to dismiss. *Bell Atlantic Corp.*, 127 S. Ct. at 1965, 1974; *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007).

### III.     Discussion

The three counts at issue on this motion to dismiss are: 1) that State Farm, through its agent Perritt, violated the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"); 2) that State Farm, through its agent Perritt, negligently misrepresented the amount of insurance Plaintiff actually required to replace his property; and 3) that State Farm has caused Plaintiff to suffer extreme and debilitating emotional distress. (*See* Doc. 5-2 ¶¶ 42-55.) The court will address each claim in turn.

### A. **The UTPCPL**

The essence of Count III of the complaint is that State Farm, through its agent Perritt, engaged in "deceptive conduct" by knowingly representing to Plaintiff that he required more insurance than was strictly necessary, causing Plaintiff to be over-insured. (*Id.* ¶ 47.) Plaintiff further alleges that State Farm acted duplicitously by then failing to pay the limits of the insurance policy upon total loss of his property. (*Id.*)

The UTPCPL provides a private right of action by a person who purchases goods or services for personal, family or household purposes and suffers any ascertainable loss of money or property as a result of certain unfair trade practices. 73 Pa. Cons. Stat. Ann. § 201-9.2. Plaintiff's factual allegations suffice to state a plausible claim that State Farm knowingly represented that a particular amount of insurance coverage was needed when it was not needed, *see* § 201-2(4)(xv), and that State Farm knowingly represented that its insurance policy had a use, benefit, or quantity that it did not have, *see* § 201-2(4)(v). These allegations describe affirmative fraudulent representations which are actionable under the UTPCPL. *Schroeder v. Acceleration Life Ins. Co. of Pa.*, 972 F.2d 41, 46 (3d Cir. 1992); *see Pekular v. Eich*, 513 A.2d 427, 433 (Pa. Super. 1986).

Plaintiff fails to state a claim, however, for State Farm's alleged failure to pay the limits of his policy. The UTPCPL provides a cause of action for active misfeasance, the improper performance of a contractual obligation, but not nonfeasance, the mere failure to perform. *Gordon v. Pa. Blue Shield*, 548 A.2d 600, 604 (Pa. Super. 1988); *Raab v. Keystone Ins. Co.*, 412 A.2d 638, 639 (Pa. Super. 1979). An insurer's refusal to pay benefits to which an insured feels entitled is

nonfeasance. *Gordon*, 548 A.2d at 604; *Raab*, 412 A.2d at 639; *see also Horowitz v. Fed. Kemper Life Assurance Co.*, 57 F.3d 300, 307 (3d Cir. 1995); *Smith v. Nationwide Mut. Fire Ins. Co.*, 935 F. Supp. 616, 620 (W.D. Pa. 1996). Paragraph 47(d) of Plaintiff's complaint alleges liability under the UTPCPL for State Farm's failure to pay the limits of his policy – thus he alleges nonfeasance, not misfeasance. Because nonfeasance is not actionable under the UTPCPL, his claim in ¶ 47(d) will be dismissed.

### B.     Negligent Misrepresentation

Count IV alleges that "[a]t the time Perritt made the representation to [Plaintiff] regarding the amount of insurance he needed, Perritt had no reasonable grounds for believing them to be true" and that his representation was made in a reckless and negligent manner not warranted by the information Perritt had at the time and without regard to whether his representation was true. (Doc. 5-2 ¶¶ 51-52.) As a proximate result of Perritt's "misrepresentations," Plaintiff paid a premium for insurance coverage he did not receive. (*Id.* ¶ 53.)

A cause of action for negligent misrepresentation in Pennsylvania arises when one makes a misrepresentation of a material fact with the intent to induce another party to act upon it. *Gibbs v. Ernst*, 647 A.2d 882, 890 (Pa. 1994). The speaker must either 1) know that the representation is false, 2) be unaware as to its truth or falsity, or 3) make the representation under circumstances in which the speaker reasonably ought to have known of its falsity, such as failing to make a reasonable investigation into the truth of the assertion. *Bortz v. Noon*, 729 A.2d 555, 561 (Pa. 1999); *Gibbs*, 647 A.2d at 890. The other party must justifiably rely

on the misrepresentation, resulting in some injury or damages.[1]  *Gibbs*, 647 A.2d at 890.  Accepting all of Plaintiff's alleged facts as true and drawing the inferences therefrom in the light most favorable to him, he has stated a plausible claim for relief for negligent misrepresentation.

Plaintiff alleges that Perritt's assessment of the amount of insurance coverage "absolutely necessary" for his property and home was a misrepresentation. (Doc. 5-2 ¶¶ 6, 51, 53.)  Such a quote from an insurer's agent is made with the intent to induce a potential-insured to act upon it.  *See Collister v. Nationwide Life Ins. Co.*, 388 A.2d 1346, 1353 (Pa. 1978); *Rempel v. Nationwide Life Ins. Co., Inc.*, 370 A.2d 366, 368 (Pa. 1977) (plurality).  Plaintiff does not allege that Perritt knew his estimate to be false, but he does claim that Perritt had no reasonable grounds for believing that the representation was true (*id.* ¶ 51) or made the representation in a reckless and negligent manner without regard to whether or not it was true (*id.* ¶ 52). It is reasonably inferred from the facts that Perritt may have failed to make a reasonable investigation into the truth of his assessment of the value of Plaintiff's home and property.  Plaintiff relied on Perritt's assessment to purchase the policy for the full amount of coverage Perritt suggested (*id.* ¶ 6), then incurred the detriment of

---

[1] In *Bilt-Rite Contractors, Inc. v. Architectural Studio*, 866 A.2d 270, 287 (Pa. 2005), the Pennsylvania Supreme Court adopted as Pennsylvania law § 522 of the Restatement (Second) of Torts which provides, in part:
> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

This statement of the law does not "supplant[ ] the common law tort of negligent misrepresentation, but rather . . . clarif[ies] the contours of the tort as it applies to those in the business of providing information to others." *Bilt-Rite Contractors*, 866 A.2d at 287.  Thus, the *Gibbs* factors remain pertinent to the negligent misrepresentation analysis.

not receiving the full amount of protection he believed he purchased (*id.* ¶ 53.) These allegations are sufficient to state a plausible claim for negligent misrepresentation.[2]

### C. **Emotional Distress**

The final count of Plaintiff's complaint is for the "extreme and debilitating mental anguish and emotional distress (and associated physical manifestations and injuries)" that he has suffered and will continue to suffer as a direct and proximate result of State Farm's "negligent and intentional conduct." (*Id.* ¶ 55.)

Section 46 of the Restatement (Second) of Torts states that "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm."[3] Comment d. to § 46

---

[2] Defendant suggests that this negligence count of the complaint is barred by the "gist of the action" doctrine because the essence of Plaintiff's case is that State Farm failed to perform its contractual duties. (Doc. 6 at 10.) Pennsylvania courts permit claims like fraud or negligent misrepresentation to be pled with claims for breach of contract when the tort claims relate to the defendant's alleged fraudulent or negligent misrepresentation that induced the plaintiff to enter the contract. *Sullivan v. Chartwell Inv. Partners, LP*, 873 A.2d 710, 719 (Pa. Super. 2005). The gist of the action doctrine bars claims for fraud or misrepresentation in the *performance* of a contract, not in its formation. *Id.*

[3] Although the Pennsylvania Supreme Court has expressly declined adopt § 46 of the Restatement (Second) of Torts stating the elements required to demonstrate intentional infliction of emotional distress, *Kazatsky v. King David Mem. Park, Inc.*, 527 A.2d 988, 989 (Pa. 1987), it has cited § 46 as "setting forth the minimum elements necessary to sustain such a cause of action." *Taylor v. Albert Einstein Med. Ctr.*, 754 A.2d 650, 652 (Pa. 2000). Some lower Pennsylvania courts appear to have adopted § 46. S*ee Hart v. O'Malley*, 647 A.2d 542, 553-54 (Pa. Super. 1994) (collecting cases reflecting confusion as to whether § 46 has or has not been adopted by Pennsylvania). This court need not decide whether the Pennsylvania Supreme Court would now choose to adopt § 46 because the facts of Plaintiff's complaint do not implicate its terms.

elaborates on the "extreme and outrageous conduct" required to state a cause of action for the intentional infliction of emotional distress.

> Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society. Generally, the case is one in which the recitation of facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

Restatement (Second) of Torts § 46, cmt. d, *quoted in Jones v. Nissenbaum, Rudolph & Seidner*, 368 A.2d 770, 773 (Pa. Super. 1976).

The court must determine, as a matter of law, whether the defendant's conduct "can reasonably be regarded as so extreme and outrageous as to permit recovery." *Strickland v. Univ. of Scranton*, 700 A.2d 979, 987 (Pa. Super. 1997) (quoting *Reimer v. Tien*, 514 A.2d 566, 569 (Pa. Super. 1986)). Pennsylvania courts have rarely held that a defendant's behavior constituted outrageous conduct. It was "beyond all possible bounds of decency and . . . atrocious and utterly intolerable in a civilized community" for the Philadelphia Electric Company to have released radioactive steam upon a contract worker, then lie to him to conceal the action. *Field v. Phila. Elec. Co.*, 565 A.2d 1170, 1184 (Pa. Super. 1989). Similarly, sexual abuse of a young male parishioner by a priest was sufficiently extreme and outrageous to permit recovery for intentional infliction of emotional distress. *Johnson v. Caparelli*, 625 A.2d 668, 672 (Pa. Super. 1993).

Allegations of wrongs falling short of these very extreme examples of outrageous conduct are simply not cognizable. Alleged conversion of money or property, *McKeeman v. Corestates Bank, N.A.*, 751 A.2d 655, 661 (Pa. Super. 2000), filing suit to recover monies owed, *Strickland*, 700 A.2d at 987, or terminating an employee for embarrassing his employer and a customer, *Hunger v. Grand Cent.*

*Sanitation*, 670 A.2d 173, 177 (Pa. Super. 1996), do not rise to the level of extreme and outrageous behavior.  Like these latter cases, the factual allegations in Plaintiff's complaint, if true, do not even hint that State Farm has committed an atrocity on the level of the facts presented in the former cases.  Accordingly, this count will be dismissed.

**IV.**         **Conclusion**

Defendant's motion to dismiss will be granted in part and denied in part.  An appropriate order will follow.

S/Sylvia H. Rambo<br>United States District Judge

Dated:  October 29, 2007.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ANDREW LITTLETON,** | : | No. 1:07-CV-01515 |
| **Plaintiff** | : | **JUDGE SYLVIA H. RAMBO** |
| v. | : | |
| **STATE FARM FIRE & CASUALTY COMPANY,** | : | |
| **Defendant** | : | |

## O R D E R

In accordance with the foregoing memorandum of law, **IT IS HEREBY ORDERED THAT** the motion to dismiss filed by Defendant State Farm Fire & Casualty Company is **GRANTED** in part and **DENIED** in part. The motion is **GRANTED** as to:

1) the allegation in ¶ 47(d), basing Plaintiff's right to recover upon Defendant's refusal to pay the upward limit of Plaintiff's insurance policy and

2) Plaintiff's claim for emotional distress.

The motion is **DENIED** as to all other counts and claims.

S/Sylvia H. Rambo
United States District Judge

Dated: October 30, 2007.